On our calendar, Rosario Gambino v. U.S. Rural Commission is submitted on the briefs, and Powers v. Wells Fargo Bank is submitted on the briefs. Craig Hughes v. U.S. Foodservice, Appellant Stephen Glazer Paul Kane v. Appellant Stephen Glazer One stipulated fact is the linchpin to this appeal. Plaintiff Hughes was not medically required to work from home. He preferred to work from home. In fact, he was medically cleared to commute up to a half hour each way. The law doesn't elevate an employee's residential neighborhood of choice above the employer's reasoned decision about how and where its job should be performed. As a matter of law, in a commuting length case like this one, it's the employee who has the burden of using reasonable self-help to manage his or her commuting length restriction. This follows from employment law in a wide variety of contexts. Commuting under the law is the employee's responsibility. Employees don't get paid, for example, for their commuting time. In the entire balance of everything, it's a reasonable accommodation for an employer to let the fellow work at home and make reasonable accommodations. What's wrong with that? As a matter of law, it is not reasonable for the employee to fail himself or herself to use self-help to manage his or her commuting length restriction. It's the employee's obligation to get to work, and all the reasonable accommodation is made at the workplace, but you don't have to do anything else. The employer accommodates in the workplace, but the employee, through reasonable self-help, must get to the workplace. Is there a case on that that says that's the law? Well, we cited a raft of district court cases and the EEOC's own guidance on the issue in our brief. There is no California law here? That's correct. There's no California law addressing the point one way or the other. My suggestion, though, is that the commuting obligation being the employee's does follow from a wide variety of employment law principles, namely commuting time being the employee's responsibility, commuting expense, mileage being the employee's responsibility. If it's an employee's injured during his or her commute, workers' compensation is available for that. If an employee commits torts while commuting to work, that's not the employer's responsibility either. In a whole host of contexts, then, the commuting responsibility is viewed to be the employee's. Here, Mr. Hughes declined to use reasonable self-help. He rebuffed every overture that the employer made. Those overtures were, you get yourself to work here and we will do these various things to make your job easier once you're here. Isn't that correct? No, one more than that. The company was prepared to discuss subsidizing his relocation to permit him to live closer to the workplace. And as Mr. Hughes admitted on cross-examination at page 130 of the transcript, he was not interested in any accommodation that required him not to work from home. The interactive process was shut down at that point because he said, if you're not going to let me work at home, then I'm not interested. Now, I'm obviously aware of Judge Reinhart's opinion in the Humphrey case, which recognized a limited exception to the normal principle. That case was a plaintiff who was unable to commute at all. The Humphrey plaintiff was a transcriptionist. Preparing transcripts obviously can be done anywhere. And that employer had allowed other employees in similar positions to work from home. And for some reason in that case, that employer suddenly said, no, you can't do that, Ms. Humphrey. That case is different from that one because in that case, the Humphrey plaintiff was restricted from commuting at all. That plaintiff couldn't get out of the house, as Judge Reinhart's opinion said. But Mr. Hughes, by contrast, declined to use any self-help. He could commute. He just chose to live outside the 30-minute commuting restriction that his doctor had imposed. He made a personal choice that he wanted to live in the Glendale area. He had a wife that was working kind of near where their home was. It was convenient for her to live where they did. But the subsidizing that USF was going to give him would require him to live closer to the plant, their place of work. Is that right? That's correct. So he and the wife would have to move houses somewhere. They'd have to move into a different house. Well, several responses to that, Your Honor. Several responses to that, Your Honor. First, it is correct. Evidently, the Glendale house was very close to the wife's job. Lots of couples live halfway between their jobs without difficulty. And in deciding that he wanted to continue to live in Glendale so close to his wife's job, that may be rational. It may be thoughtful, but it's not naturalistic. He wasn't very gripe about things. And there may be all sorts of good reasons why he wanted to make that choice, but it was his choice to make. And it's not U.S. Food Service's job to subsidize or to bear the burden of that kind of lifestyle choice. I would also add, and this point was not. We've gotten two issues mixed up here. If the employer has absolutely no obligation to provide ability for an employee to work from home, then it really doesn't matter whose choice it is where that employee works. Is that correct? Yes, our first position is that it is the employee's responsibility to present himself or herself at the workplace, except in perhaps unusual circumstances, such as the Humphrey plaintiff, who was not able to leave the house at all. Is that a distinction without a difference? In other words, if she had a disorder that didn't allow her to go out in public, but if she could stand to be out in public for three blocks, would she have had to move to three blocks from work? I think you can probably pick real hard and difficult cases that maybe press the outer limit of the exception that the Humphrey case recognized. But that certainly isn't this case. This is a case. Aren't you advocating a broad rule that in this case, U.S. Food Service had no obligation whatever to accommodate a desire to work from home? That's not part of its job. That is our first position, Your Honor. Was there any discussion in the district court about whether that issue could be certified to the California Supreme Court? Are you dealing with California disability law and not with federal disability law? And you've said there's no California case on the front. I don't know of any reason to assume that on this point California law would differ with federal law. And as I mentioned, we cited, it must be 15 district court cases that have embraced the proposition that I'm articulating under federal law. California is always free to do something different if they want to. It is. And there are places in the Fair Employment and Housing Act where the language of the statute differs from the Americans with Disabilities Act. Even with the identical language, a state supreme court could interpret a statute to give a broader protection than the federal government. It certainly could. That hasn't happened here. What would be your position on whether we should certify that issue to the California State Supreme Court? I mean, I don't know how receptive they are on this type of issue. What would be your client's position on whether our panel should make that effort first? I think that that is an option. And there's a mitigation of damages issue that also might be susceptible to a certification, which I'll get to in a minute. But I think we should win the case on an entirely different ground where, again, I don't think there's any reason to trouble the California Supreme Court with the threshold question of law. But let me further respond to Judge Thompson's question about the wife's residence. And I would refer you to excerpts of the record, page 94, where the plaintiff admitted, my wife's job wasn't the reason, I just didn't want to commute. So let me turn to that second reason, separate and apart from the threshold obligation of whether, in some circumstances, work at home is a reasonable accommodation. Even assuming that it can be, it isn't a reasonable accommodation here. An accommodation, by definition, is not reasonable if it would sacrifice the job's key functions. And as I mentioned earlier in the Humphrey case, the work at issue was transcript preparation, which, of course, could be done anywhere. And here, by contrast, the job necessarily required teamwork and on-the-spot collaboration among coworkers. What about the person on the first floor? The person on the first floor was the person who worked in the Will Call office. And this was a special customer care specialist who participated, needed to be on the first floor to deal with walk-in customers. And so, necessarily, he had to be removed from everybody else. But even that person was on-site. That's not an example of someone who was free to work anywhere. That person was working on-site in a particular location on-site for important job-related reasons. And where collaboration, where teamwork was necessary, was just a matter of steps. Can you view that teamwork with me, where you'd shout to somebody, say, you need some help, or just a minute, I'll put you on hold and talk to your buddy? Yeah, the teamwork is undisputed in a variety of contexts. Working with colleagues on issues of credit, working with colleagues on a host of issues. Issue of credit, what do you mean by that? Customer credit, customer credit holds. That's pages 39 and 40. Ask your buddy that's also down the hall there. Say, well, is this guy's credit any good? Put him on hold and then ask your friend or something? I don't think the record goes into an enormous amount of detail, but the testimony on that point is at pages 39 and 40 of the transcript. You need to interact physically where there are certain special orders that are unusual, pages 36 and 37 of the reporter's transcript, and pages 74 and 75 of the transcript, the need for in-person communications. The person that you asked about who's on the first floor had the ability to do that in just a matter of steps. They could interact themselves personally together. That person was not working off-site. What do we do with Judge Baird's specific finding, page 8 of her opinion? The court finds that Hughes has proved by preponderance of the evidence that he is disabled and has the ability to perform the essential functions of the new position as a CCS with the reasonable accommodation of the installation of a computer access program at his home as he requested. And then she goes on to say USF offered no evidence of undue hardship. So what do you do with that finding? We are not challenging, although we disagree with, her findings that deal with the issue of the rotary phone system and certain other technological aspects of the job. I don't think she analyzed them correctly, and as we point out elsewhere in the brief, we don't think she allowed our side to present rebuttal evidence. But we're assuming that those findings are correct for purposes of RPO now. She simply did not analyze the issues of interpersonal interaction and teamwork. She analyzed in detail the technological issues, but did not analyze at all the need for interpersonal interactions. What is the interpersonal interaction that's required? Those that I just described, Your Honor, dealing with the credit issues, dealing with special kinds of orders and others. Does it have to be resolved on the spot? On the spot quickly to avoid causing a customer to become dissatisfied. And what I would suggest is this was a company that was trying to figure out a way to build a better mousetrap, figure out a way to deal with customer care better. And the law should not stand as an impediment to that. The law shouldn't say that if the employer is trying to do the job better, it is unable, therefore, to do it. Let me turn to the mitigation of damages question, if I might, given the shortness of time. Mr. Hughes, after leaving U.S. Food Service, did not apply for any job anywhere, and he did not even look for jobs except jobs that would have allowed him to work from home. He admitted that he did not look for any job that he could have performed consistent with his 30-minute commuting restriction. About a year after he left U.S. Food Service, he voluntarily relocated, moved away, which I think is curious since he was taking the position that he shouldn't have had to move. But even after he moved away, he didn't look for any jobs anywhere either. So we suggest that at worst this should be a zero damages case with no attorney's fees because he failed to satisfy the prima facie obligation, the very threshold obligation of making reasonable efforts to find work that he could do. And by not looking for any job outside the home, not even within the 30-minute commuting radius that he was able to work, he failed to make that prima facie showing. But you said you were not arguing, going back to my question, you were not arguing that Judge Baird's finding that I read to you was wrong. I gathered from your further response what you're saying is she failed to make a necessary finding on another aspect of the question. Yes, we're assuming to be true the findings as far as they went, but she simply made no findings about the issues of teamwork, cooperation, and the need for personal interaction other than those that were at issue in the technological dispute that was tried. You filed a motion for further findings, which was denied? No, we did not. All right. Thank you, Your Honor. Good morning, and may it please the Court, I'm Stephen Glazer, I represent Craig Hughes. Excuse me. Mr. Glazer, at some point in your argument, I'd like you to address the issue raised by my question about certification, because it seems to me at least that the issue of accommodating a worker by letting them work at home is a fairly broad principle that could go either way as a matter of state law. So why shouldn't the states in court at least get the opportunity to opine on it before we interpret state law? Because this Court has already ruled in the Humphrey case that work from home can be a reasonable accommodation if the employee can perform the essential functions of the position from home and there's no undue burden on the employee. So is Humphrey interpreting California? Yes, the Humphrey case interpreted both California's Fair Employment and Housing Act and the federal ADA. And I've also found that the EEOC provides that working from home can be a reasonable accommodation. The what? The EEOC, Equal Employment Opportunity Commission on the federal level, provides that working from home can be an effective accommodation. And before we go into, I do want to meet this issue head on, but I don't want to gloss over the fact that from our position, this is an issue raised for the first time on appeal. In the pretrial conference order, USF stipulated that from March 1998 through May 2001, when Hughes was terminated, USF accommodated Hughes' disability by allowing him to work from home. Yeah, but they take the position now they didn't have to do that. And then this lady came in and changed things around to do a better job, make a bigger mousetrap or whatever. And then they just decided to rearrange the structure of the work to be performed. That's correct. But they also stipulated that during the relevant time period, Hughes suffered from a physical disability within the meaning of the Fair Employment and Housing Act. And the combination of those two stipulations, that Hughes was a disabled person within the meaning of the act, therefore he is entitled to the benefits of the act, and that USF accommodated his disability for three and a half years by allowing him to work from home, removed from the trial any issue of whether or not USF had a legal duty to accommodate the limiting nature of Hughes' disability. And that's why in a case like this, we had no medical testimony. We had no evidence of the additional benefits to Hughes of working from home, in addition to accommodating the commuting issue. We stipulated sufficient facts to get beyond those points, and tried to the district court only the issues of whether or not Hughes could perform the essential functions of the new position from home, whether or not USF suffered undue burden if it allowed him to continue that accommodation that it had already offered to him, and what were Hughes' damages. And the district court made, contrary to counsel's argument, the district court did make an express finding that the only essential function, I'm reading from excerpts of record page 313, the district court's finding of facts and conclusions of law, the only essential function, the new CCS position, which was not an essential function of Hughes' former position, is efficient access to USF's computer programs, CityDesk, and RMS. And that's why this trial was focused to almost exclusively on the issue of whether or not this change in building this better mousetrap, and utilizing new computer programs, whether Hughes could access those computer programs from home, because he was essentially doing, had already successfully performed all of these job tasks from home. USF stipulated that Hughes' performance from home was satisfactory, and what USF did is it had made this accommodation and then lifted away, pulled the rug out from under him, without investigating whether or not these new computer programs could be accessed from home, even though they took the position that he could not continue to work from home because we were now using new computer programs. And what is somewhat ironic is that stipulation that I read to you earlier, that USF accommodated Hughes' disability by allowing him to work from home. USF, both to the California Department of Fair Employment and Housing and to the District Court, touted that fact and said, we are not disability discriminators. When we need to, we accommodate our disabled employees. We allowed Hughes to work from home as a reasonable accommodation for his disability for three years. But now we're doing things differently. And now we can no longer do that because we have these new computer programs, and we're very sorry, but we just can't continue to extend that accommodation. When they lose at trial on those factual issues of whether or not Hughes could access those computer programs from home, and now those factual determinations that they can't challenge on appeal, they suddenly come back to square one and say, well, we never had a duty to accommodate him in the first place. And that's simply not the law in California. Courts have routinely rejected arguments by employers that are a rigid application of some per se rule that we don't have a duty to accommodate. The hallmark of the Fair Employment and Housing Act is the flexibility it requires of employers. You have the universe of physical and mental limitations that disabilities can impose upon people. You have the universe of different job tasks, different abilities, different things that employees do. The law requires maximum flexibility in the interactive process to determine if an employee can be reasonably accommodated without undue hardship for the employer. And, for example, the case that I believe is directly on point is Sargent v. Litton Systems, where the employer in that case raised the exact same argument that USF is raising in this case, where the employee in the Sargent case couldn't make the commute to the new facility in San Jose. It was too long. It hurt her back. And the employer said, we have, as a matter of law, no obligation to get the employee to the workplace. Our obligation starts at the office door. And the court in that case said it rejected the defendant's attempts to carve a rigid rule from what, by all accounts, is a law that was designed to encourage flexibility and accommodation. And it ruled that the employer does have an obligation to assist the employee with all aspects of the employee's disability if it can do so without unduly burdening its operation. It's that flexibility that prevents courts, that courts will not apply rigid rules. Same thing with Buckingham. In Buckingham, the employee acquired the HIV virus. The employee wanted to move to Los Angeles because the employee felt he could get better treatment for his illness in Los Angeles. Certainly, the employer in that case was not responsible for the quality of medical treatment in, I think it was Mississippi. And the employer said, we have no obligation to help the employee get the best medical care. It has nothing to do with his job. And the court said, we are not drawing those types of hard and fast rules. There's no per se rule against transferring an employee to a different location if the employee feels he can get better treatment for his disability. That's the flexibility that's required. And what the law provides and what USF continuously shirks is there is an established procedure, an established framework and structure to these types of cases. The district court followed that structure in her findings of fact and conclusions of law. The employee first must prove that the employee is disabled within the meaning of the Fair Employment and Housing Act. That he suffers from a physical disability, in this case, and that disability limits a major life activity. USF stipulated to that in the pretrial conference order. The next issue is the employee's burden of establishing that he is a qualified individual, meaning with accommodation, he can perform the essential functions of the position. Again, it's a factual question. Hughes proved that in this case. Then the burden shifts to the employer to establish that accommodating the employee would unduly burden its operations. USF failed to do that in this case. They offered no evidence of undue burden. That's the structure. Those are the only issues that are presented in a case like this. And USF's contention is completely outside that framework. Their contention is we're going to look at, not at the disability. They continue to say we have no obligation to accommodate a commuting restriction case. They have an obligation to accommodate Hughes' back injury. You're not accommodating a commuting restriction. You're accommodating a disability. The limitation on Hughes' ability to commute is one of the limiting factors that come from that disability. There's only one time when you look at the limiting factor of the disability to determine whether or not it is, you look at its nature and sufficiency to determine whether or not the employer has a duty, a legal duty to accommodate it. And that is in determining whether or not the limiting nature of the employee's disability limits a major life activity. Once you get past that, the employee is entitled to all of the benefits under the statutory scheme and the employer has an obligation to accommodate. USF stipulated to that fact. It stipulated that Hughes suffered from a physical disability within the meaning of the particular government code section. And in that government code section it defines physical disability as a physical medical problem that subsection B limits a major life activity. Once you get to that point, Hughes is entitled to the benefits of the statute assuming he can prove that he's a qualified individual and with or without accommodation can perform the essential functions of the position. I want to turn for a minute to an entirely separate ground for liability in this case, which is USF's failure to engage in the interactive process. That inquiry is strictly a factual one. Questions of whether or not USF engaged in good faith, whether their efforts were timely, whether USF did everything within its power to try and find a reasonable and effective accommodation for Hughes' disability. All factual questions. Mr. Cain says they offered to subsidize a move closer, within half an hour I guess, to the place of work. That is a disputed fact. Hughes testified that he was the only suggestion they made was that he move and they never offered him any subsidy. USF also contends that it offered a driver. Hughes earned $37,000, $38,000 a year. They contended that they were going to pick him up, drive him to work every day, and then drive him back. Again, Hughes disputed that and was contested. There was contemporaneous writings at the time confirming all of the discussions they had, and those proposed alleged accommodations were never mentioned in any of those. And the district court resolved that issue, just as the district court resolved all of the factual questions on the interactive process claim and resolved them all adverse to USF. And I submit to this court that it's an independent basis for liability, purely a factual one, and USF has not established clear error to the district court's factual findings. I want to touch briefly on the issue of mitigation of damages. The employer bears the burden of proof on all aspects of mitigation of damages in California. USF cites New York law, I believe, for some proposition. New York law is not helpful here. In California, the employer must prove specifically what additional available occupations are available and a dollar amount that the employee could have earned had the employee pursued that employment. The district court found that USF offered no evidence on that, and that finding is supported by the record. USF cites a case, West v. Bechtel, and what happened in that case, the court in West declares that law, that the employer has the burden of proof and the employer must offer this evidence. In that case, the employer offered evidence that, in fact, that employer, after calling this employee back from, I think it was Saudi Arabia, had offered this employee numerous other comparable positions at comparable pay, but the employee refused to accept it. And based on that finding and that evidence, the court said this employee has failed to mitigate, that there is no evidence in this case of what other positions were available to Hughes and a dollar amount that he could have earned had he accepted those. And, in fact, the district court did find that Hughes made efforts to accommodate, but he wasn't successful, I'm sorry, he made efforts to mitigate, but he wasn't successful at it, and then went on to find that USF failed to meet its burden of proof. I have, I believe, completed my argument, unless there are any specific questions beforehand. It doesn't appear so. Thank you. Thank you very much. Mr. Kane, perhaps then we'll follow. Thank you. Several points quickly. We're talking here about an error of law, not an error of fact. Even if you assume that the district court correctly found that some essential functions could be performed at home, there's no question here that the employer, in trying to design this better mousetrap, in trying to redesign its customer care function, concluded that it was highly desirable to have the team working together on site. And the error of law is that Mr. Hughes' preference for his neighborhood of choice doesn't trump the employer's legitimate interest in gathering people in one place and having them work together as a team. Point two, counsel cited the Sargent case. May I ask a question about that? Does that legitimate interest come in under the rubric of undue burden on which the district court made a finding? No. You first have to decide whether the accommodation is reasonable in concept. And only if it's reasonable in concept do you then get to the issue of undue burden. And so we think we win under either prong, that just a commuting length case doesn't fit in the pigeonhole of reasonable accommodation at all. Counsel cited the Sargent case to the contrary. They have one district court case. We have 15. With all respect to Judge Patel, I think that was incorrectly decided, but it's also factually different from our case because there the defendant created the problem. That plaintiff did live near the work site, and the employer then frustrated that by transferring the individual away, thereby making it impossible for the employee to get to work. Counsel cited the Buckingham case. That's not a commuting case at all. That case simply stands for the well-established proposition that if an employee wants to transfer to an existing available position within a company, that can be a reasonable accommodation. Of course, that's correct. But here what Hughes asked is that the company recreate for him a position that it didn't want to have anymore. Hughes wanted to deny the company the right to create the better mousetrap. This is not an issue raised for the first time on appeal. Excerpts of the record 112, supplemental excerpts 242, 243, this is what we've been arguing about the whole time. The fact that we accommodated lowercase a, helped out Hughes in his earlier position, is not a concession that that was a reasonable accommodation. It's not a concession that it was required even then. The company was simply being nice. And it's certainly not a concession that the company forever is deprived of the ability to try and build that better mousetrap. Counsel used the term maximum flexibility, and I thought that was a little bit ironic because the one thing that's undisputed in this case is that Mr. Hughes showed zero flexibility. He said, I insist on working from home, period. That's page 130 of the reporter's transcript. He showed zero flexibility. The company showed a great deal. Another error of law that's inherent in counsel's argument, or at least implicit in it, is that the employer has to grant the most preferred accommodation that the individual seeks. But that's not the case. The employer need only offer a reasonable accommodation, not the most preferred accommodation. And here the record is undisputed that the company discussed a wide variety of accommodations with Mr. Hughes, and he rebuffed all of them at the threshold by saying, if that means I can't work from home, then I'm not interested. There is not a dispute about the company's willingness to entertain a housing subsidy. Mr. Hughes foreclosed that subject by saying, I am only interested in working from my current home. Counsel mentioned or suggested that an interactive process might be a separate ground. Interactive process violation might be a second ground, independent ground for affirmance. But that exactly overlaps with the basic question. There is no interactive process violation on the employer's part. And, in fact, the breakdown is the employee's responsibility, where the employee, as I said, never deviated from his position that the only accommodation he was willing to consider was one that would allow him to work at his current home. What do you do with the district court specific findings that the court finds that plaintiff has proven by preponderance of the evidence that USF failed to engage in a timely, good faith, interactive process to determine a reasonable accommodation for his disability? What do we do with that as a finding of fact? Because I don't think it's a mere finding of fact. I think it's an erroneous conclusion of law because the court assumed that the plaintiff had no obligation to use reasonable self-help to manage his own commuting length restrictions. And if you start from that proposition, then you get to that factual finding. But I think inherent in the trial judge's opinion is an erroneous conclusion of law about what the obligation to accommodate entails. Finally, with respect to mitigation, yes, of course it's true that the employer bears the burden of proving failure to mitigate, and we did. We relied on the plaintiff's admission that at page 147 of the reporter's transcript that he did not seek any job that didn't allow him to work at home. We don't have to put on additional witnesses when the plaintiff has already admitted that his failure to mitigate didn't meet the basic threshold of the employee's obligation. And finally, with respect to the certification question that Judge Gould raised, that's certainly one option. I don't think that it's certainly from our standpoint preferable to an affirmance, but I think that it's possible to reverse on a variety of the issues that we've discussed without going to the California Supreme Court. Thank you. Thank you, Mr. Cain. We thank Mr. Glazer and Mr. Cain. And Hughes v. Food Service, U.S. Food Service, has been submitted.
judges: Thompson, Gould, T. Nelson